UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

    Plaintiff,

  v.

EXPEDIA, INC.,

    Defendant.

Cause No. C19-0896RSL

AMENDED[1] ORDER DENYING NATIONAL UNION'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

This matter comes before the Court on "Plaintiff National Union's Motion for Partial Judgment on the Pleadings." Dkt. # 12. National Union provided Special Risk insurance to defendant Expedia which included "Special Professional Liability" and "Media Content" coverage. In 2016, a class action lawsuit was filed in the Northern District of California against Expedia by four hotel operator. Expedia is accused of a bait and switch marketing scheme whereby it advertises deals at hotels with which it had no contractual relationship and, when a customer attempts to make a reservation at one of those hotels, Expedia gives the impression that

---

[1] The Order is amended to reflect that National Union has not conceded that the underlying claims fall within the insuring agreement of the Special Professional Liability or Media Content coverage provisions, it simply did not contest that fact in the context of this motion.

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 1

there are no rooms available on the requested dates and drives the traffic to its contracting partners. Expedia tendered the defense of the lawsuit to National Union, which agreed to defend under a full reservation of rights. National Union filed this action to obtain a declaration regarding its defense and indemnity obligations. National Union argues that claims or losses arising from allegations of false advertising or trademark infringement are excluded from the applicable coverage provisions.

The Court, having reviewed the memoranda, declarations, and exhibits submitted by the parties, finds as follows:

**A. Coverage Provisions**

    1. Media Content ("MC") Coverage

The MC coverage contains National Union's promise to pay the insured if it is held liable for, among other things, "any act, error or omission, negligent supervision of employee, misstatement or misleading statement" in any form of media content which results in, among other things, an infringement of trademark or trade dress. Dkt. # 1-2 at 46 and 48. The coverage expressly applies to claims of unfair competition in connection with such infringement. The coverage does not, however, apply to claims "alleging, arising out of, based upon or attributable to (1) false advertising or misrepresentation in advertising of an Insured's products or services . . . or (3) any infringement of trademark or trade dress by any goods, products or services, including any goods or products displayed or contained" in any form of media content. Dkt. # 1-2 at 51 (Exclusion (p)).

    2. Specialty Professional Liability ("SPL") Coverage

Under the SPL coverage provision, National Union promised to pay the insured if it is

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 2

held liable for "any negligent act, error or omission, misstatement or misleading statement in an Insured's performance of Professional Services for others . . . ." Dkt. # 1-2 at 20 and 22. Under Exclusion (b), as amended by Endorsement # 4, the coverage does not apply to any loss connected to a claim "alleging, arising out of , based upon or attributable to any misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right . . . ." Dkt. # 1-2 at 62. Subparagraph (p) excludes coverage for claims "alleging, arising out of, based upon or attributable to false advertising or misrepresentations in advertising." Dkt. # 1-2 at 24.

**B. Construction of Insurance Policies**

> In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

*Panorama Village Condominium v. Allstate Ins. Co.*, 144 Wn.2d 130, 137 (2001) (quoting *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 665-66 (2000)) (internal quotation marks omitted).

In this case, Expedia, as the insured, has the burden of showing that the claims asserted in the underlying litigation trigger one or more insuring provisions of the agreement. *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271-72 (2011). For purposes of this motion,

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 3

National Union does not dispute that the SPL and MC coverages apply. The burden then shifts to the insurer to show that an exclusion bars coverage. *Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d 255, 268 (2008).

When the issue is whether the insurer has a duty to defend, rather than a duty to indemnify, the mere potential for liability triggers the duty. Thus, if the complaint against the insured alleges facts which could, if proven, impose liability that falls within the coverage provision, the duty to defend arises. *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802-03 (2014). Facts outside the four corners of the complaint may trigger the duty to defend in two situations:

> First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer *must* investigate and give the insured the benefit of the doubt that the insurer has a duty to defend. [*Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 761 (2002)]. . . . Second, if the allegations in the complaint """"conflict with facts known to or readily ascertainable by the insurer,"""" or if """"the allegations ... are ambiguous or inadequate,"""" facts outside the complaint may be considered. *Truck Ins.*, 147 Wn.2d at 761 (quoting *Atl. Mut. Ins. Co. v. Roffe, Inc.*, 73 Wn. App. 858, 862 (1994) (quoting *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 908 (1986))). The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty. *Id.*

*Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53-54 (2007) (emphasis in original). "Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend." *Truck Ins.*, 147 Wn.2d at 760. Any ambiguities in the complaint must be liberally construed in favor of triggering the insurer's duty to defend. *Woo*, 161 Wn.2d at 53.

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 4

**C. The Underlying Lawsuit**

In 2016, four hotel operators filed a class action lawsuit against Expedia and its related companies, alleging that when customers search for their hotels on Google or one of Expedia's websites, Expedia displays the hotels as if it the customer were able to make a reservation through its websites. The hotel operators allege, however, that they are not affiliated with Expedia and that Expedia has no ability to book rooms at their hotels. Plaintiffs further allege that, after using their hotels as bait to lure customers to its websites, Expedia used a number of tricks to entice consumers to book "at Expedia's nearby member hotels with whom it is authorized to sell rooms and who pay Expedia a fee for every room booked through its website." Dkt. # 1-1 at ¶ 2.

Plaintiffs allege that the bait and switch scheme is "brazen and comprehensive," involving a number of discrete steps or stages. Dkt. # 1-1 at ¶ 3. First, Expedia uses paid advertisements on search engines like Google, where it implies that it can offer incredible deals at whatever hotel the customer typed into the search bar. The paid advertisement appears at the top of the results list and invites the consumer to click a link to one of Expedia's websites. Once a consumer lands on one of Expedia's websites, either directly or by clicking the Google advertisement link, the consumer is prompted to enter prospective travel dates to check for room availability. Although Expedia has no ability to book rooms at plaintiffs' hotels, their businesses are listed in the results with false statements implying that the hotel is sold out or that rooms are unavailable for the selected dates. The results page provides the name and location of plaintiffs' hotels, but lists phone numbers that Expedia controls. Calls intended for plaintiffs' hotels are thereby diverted to Expedia personnel who use scripts to funnel the consumer to affiliated hotels

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 5

in the area. Finally, if the consumer does not immediately book a room through its websites, Expedia targets the consumer with social media advertisements for plaintiffs' hotels, encouraging them to revisit Expedia's websites so the consumer can book the hotel he or she has been looking for at a great price. If the consumer falls for the bait, step number two is replayed.

Plaintiffs further allege that Expedia is well aware that its marketing practices are deceptive because it has been sued and fined in Europe for the same practices. Dkt. # 1-1 at ¶¶ 3, 4 and 23-24. In addition, plaintiffs allege that Expedia ignored similar complaints from innkeepers in Canada until the Canadian Broadcasting Company began an investigation, at which point Expedia discovered "coding errors that had been corrected recently." Dkt. # 1-1 at ¶ 26.

The underlying complaint asserted five causes of action, but the parties agree that the sole remaining claim is one for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). In connection with that claim, the hotel operators alleged that "Expedia made false or misleading statements in on-line travel and booking services which misrepresented the nature, characteristics, and qualities of the hotels' services and commercial activities." Dkt. # 1-1 at ¶ 77.

**D. Coverage Analysis**

    1. MC Coverage

For purposes of this motion, the parties agree that the hotel operators' Lanham Act claim against Expedia falls within the insuring agreement of the MC coverage provision, which covers misstatements by the insured in any form of media content. Dkt. # 17 at 2. The issue, then, is whether one of the exclusions to the MC coverage applies. In order to avoid coverage, National

Union has the burden of showing that "the loss is excluded by specific policy language." *McDonald v. State Farm Fire and Cas. Co.*, 119 Wn.2d 724, 731 (1992). "Exclusions from coverage are strictly construed against the insurer because they are contrary to the protective purpose of insurance." *Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, 132 F. Supp.3d 1275, 1286 (W.D. Wash. 2015) (citing <u>Stuart v. Am. States Ins. Co.</u>, 134 Wn.2d 814, 818-19 (1998)).

### a. False Advertising Exclusion

Exclusion (p) of the MC coverage bars coverage for any claim "alleging, arising out of, based upon or attributable to (1) false advertising or misrepresentation in advertising of an Insured's products or services . . . ." The parties disagree regarding the meaning of the phrase "of an Insured's products or services" in this context. National Union argues that anything and everything Expedia says in its advertising is in furtherance of its own business interests and is therefore uncovered "advertising of [its] products or services." Expedia, on the other hand, argues that the exclusion applies only to misrepresentations about its own products or services, not those of another. National Union does not offer any extrinsic evidence regarding the purpose of this exclusion or how it fits with the language of the insuring provision.

Expedia points out that Exclusion (p)(1) does not simply exclude "false advertising or misrepresentation in advertising," which is the language used in the equivalent exclusion to the SPL coverage. If, as National Union would have it, it intended to exclude from coverage all false statements Expedia made in advertising, there would be no need to add the phrase "of an Insured's products or services" to accomplish that purpose. As written, the false advertising must be "of an Insured's products or services." Where neither "advertising" nor "false advertising"

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 7

are defined by the policy, the "false advertising" exclusion "is generally thought to refer to inaccurate and misleading representations . . . concerning the insured's own product, rather than that of another entity." The Rutter Group, Cal. Practice Guide: Ins. Litig., ¶ 7:2574 (2019). Otherwise, protections expressly granted, such as coverage for claims arising out of disparaging comments aimed at the another's product, would be negated by the exclusion. Such an interpretation would be unreasonable. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666 (2000) (an insurance policy must be given a "sensible construction as would be given to the contract by the average person purchasing insurance").

National Union's interpretation of Exclusion (p)(1) is problematic in at least three ways. First, it gives no meaning to - or ignores - the phrase "of an Insured's products or services." Second, it is an impermissibly expansive reading of an ambiguous exclusion. Finally, it ignores the allegations of the underlying complaint. In support of their Lanham Act claims, the hotel operators specifically allege that Expedia misrepresented "the nature, characteristics, or qualities of [the hotel operators'] services or commercial activities." National Union cannot simply ignore the hotel operators' allegations of misleading representations regarding their products and services in order to fall within a coverage exclusion.

      b. Trademark Exclusion

National Union also relies on Exclusion (p)(3), which excludes coverage for claims "alleging, arising out of, based upon or attributable to . . . (3) any infringement of trademark or trade dress by any goods, products, or services, including any goods or products displayed or contained in any" form of media content. But the hotel operators' Lanham Act claim can succeed without having to show that they have a protectable trademark or that Expedia infringed

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 8

on their intellectual property rights. In certifying a class of hotel operators, the underlying court noted that "[a] false advertising claim consists of the following elements: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement . . . ." *Buckeye Tree Lodge and Sequoia Village Inn, LLC v. Expedia, Inc.*, 2019 WL 1170489 at *3 (N.D. Cal. Mar. 13, 2019). None of the elements of the sole remaining claim requires proof of an intellectual property right or its infringement.

      National Union asserts that, even though the trademark claim in the underlying litigation is no longer viable and the only remaining claim is for false advertising, each of the misrepresentations alleged by the hotel operators involves the use of the hotel operators' trademarks. In particular, National Union argues that "Expedia's fake telephone numbers, false 'unavailability' messages, Facebook and social media advertisements, and diversion of customers searching on Google for Buckeye's hotel all use Buckeye's mark," citing to three pages of Expedia's response memorandum. Dkt. # 17 at 4. National Union makes no effort to explain how displaying a phone number, making false statements about a competitor's services, or utilizing search engine links turn on the existence and infringement of a trademark. As the hotel operators' motion for summary judgment makes clear, they accuse Expedia of falsely representing information regarding unaffiliated hotels on its websites. Dkt. # 16-6 at 18. The claim does not arise out of the hotel operators' intellectual property, and Exclusion (p)(3) does

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 9

not apply.

2. SPL Coverage

Because National Union has a duty to defend under the MC coverage provision, the Court need not determine whether it must also defend under the SPL coverage provision.

**E. Duty to Indemnify**

As discussed above, the hotel operators are pursuing a claim against Expedia that may, depending on the facts as actually determined, fall within the insuring agreement of the MC coverage. It is therefore premature to determine whether the duty to indemnify will be triggered.

For all of the foregoing reasons, National Union's motion for partial judgment on the pleadings (Dkt. # 12) is DENIED.

Dated this 5th day of October, 2020.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

AMENDED ORDER DENYING NATIONAL UNION'S
MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS - 10